EDWARD W. BROWNING, Plaintiff, *v.* FRANCES HEENAN BROWNING, Defendant.

Supreme Court, Putnam County, March 21, 1927.

**Husband and wife — separation — plaintiff, fifty-two years of age, charged abandonment which wife, sixteen years of age, did not deny — plaintiff entitled to separation where defendant failed to justify her conduct in leaving plaintiff.**

In this action for separation, the plaintiff, fifty-two years of age, is entitled to a judgment on the ground of abandonment, where the defendant, an infant sixteen years of age, after interposing a defense of justification, set up a counterclaim wherein she demanded a separation from plaintiff on the grounds of cruel and inhuman treatment and conduct rendering it unsafe and improper for the defendant to continue to cohabit with the plaintiff, which she failed to substantiate in the face of her conduct in leaving and abandoning her husband, particularly where the evidence shows that his treatment of the defendant and her mother was uniformly kind and considerate.

ACTION by wife for separation.

*Tompkins & Dale [John E. Mack of counsel],* for the plaintiff.

*Epstein & Smith,* for the defendant.

SEEGER, J. This action is brought by the plaintiff, the husband, against the defendant, his wife, for a separation from bed and board. The plaintiff is a man fifty-two years of age and the defendant is an infant of the age of sixteen years.

The complaint alleges two causes of action. The first cause of action is for alleged cruel and inhuman treatment. The second alleges the abandonment of the plaintiff by the defendant.

The first cause of action has been dismissed for failure of any proof to sustain it.

The defendant in her answer to the complaint does not deny the abandonment of the plaintiff, but pleads justification for leaving him, and a counterclaim for separation from bed and board of the plaintiff upon the grounds (1) of the cruel and inhuman treatment of the defendant by the plaintiff, and (2) conduct on the part of the plaintiff rendering it unsafe and improper for the defendant to continue to cohabit as man and wife with him.

The defendant in her counterclaim sets forth certain specific alleged acts of cruelty and alleges likewise a general course of conduct on the part of the plaintiff towards the defendant which would render further cohabitation unsafe and improper for the defendant.

The issues, therefore, are exceedingly simple. The plaintiff's charge of abandonment, if sustained by proof, establishes the plaintiff's cause of action, unless the defendant's defense and counterclaim are properly established.

The provisions of the Civil Practice Act applicable to the case are as follows:

" § 1161. Action for separation; when maintainable. In either of the cases specified in the next section, an action may be maintained by a husband or wife against the other party to the marriage to procure a judgment separating the parties from bed and board, forever, or for a limited time, for either of the following causes:

" 1. The cruel and inhuman treatment of the plaintiff by the defendant.

" 2. Such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the former to cohabit with the latter.

" 3. The abandonment of the plaintiff by the defendant. * * * "

Plaintiff's action is based upon subdivision 3, abandonment. Defendant's counterclaim is based upon subdivisions 1 and 2, both in justification and for affirmative relief.

The courts of this and other States have held that a wife is not bound to reside with her husband, when his treatment of her is such as to impair her health, safety and peace of mind, and if under such circumstances she leaves his house and refuses to reside or cohabit with him, she cannot thereby be deemed guilty of desertion or abandonment. (19 C. J. 47–60; *Williams* v. *Williams*, 130 N. Y. 193; cited with approval in *Mirizio* v. *Mirizio*, 242 id. 74, 81; *Heylmun* v. *Heylmun*, 119 Misc. 113; *Pearson* v. *Pearson*, 230 N. Y. 141; *Geimer* v. *Geimer*, 161 N. Y. Supp. 415; *Earle* v. *Earle*, 79 App. Div. 631.)

In this case a careful consideration of the testimony is required to ascertain whether the defendant's conduct in leaving the plaintiff is justified, especially in view of the youth of the defendant.

The evidence establishes that the parties were married after a short acquaintance and courtship. The plaintiff is a man of some wealth. The defendant was a school girl without means living with her mother who was a nurse dependent upon her work to support herself and daughter. The defendant had been in the habit for about a year of attending dances, theatres, motion pictures and restaurants with young men and without a chaperon. The plaintiff met defendant at a dance on the 5th day of March, 1926, after which he began calling upon her at her mother's apartment, and took her out to dinners, theatres and other places of entertainment almost daily. On March twenty-seventh the defendant's face was mysteriously burned with acid, which she claimed occurred while she was asleep. The plaintiff was summoned at once by defendant's mother, who requested him to secure a physician. He responded immediately, rendered some personal assistance and a doctor was secured who attended to the defendant's injuries. It is not clear whether plaintiff or defendant's mother actually secured the doctor's attendance, but the plaintiff paid for his services. An investigation made by the police demonstrated that the doors and windows of the apartment had not been forced and no traces of any intruder were found. The defendant claims to be ignorant as to the identity of the person who applied the acid. No acid was found upon the clothing or bed of the defendant, so that if the acid was thrown upon defendant by another person it was done with remarkable accuracy.

The defendant was confined to her room until April ninth by reason of the acid burns, during which time the plaintiff visited her daily and paid several physicians for attending her, as well as paying defendant's mother for her services in giving up other work and remaining at home and nursing the defendant. During this time the plaintiff proposed marriage, the marriage was arranged

and the parties were married at Cold Spring, Putnam county, on the 10th day of April, 1926. After the marriage the parties lived together at several places until October 2, 1926. They resided at Cold Spring; at Gramatan Inn, Bronxville; at Kew Gardens Inn; and at the Fairfield, 20 West Seventy-second street. They traveled on what they called a postponed honeymoon trip through New York State and Vermont. They then went to the Mayfair Apartment for a short time and again to Kew Gardens Inn, where they resided at the time of the separation. During their married life the plaintiff purchased considerable clothing and necessaries for the defendant as well as jewelry. He made the defendant an allowance for spending money and also made her mother an allowance. The defendant's mother resided with them a considerable part of the time during their entire married life, and was with them on the day of the separation.

It is not necessary to enumerate here in detail all the specifications of cruelty with which the defendant charges the plaintiff, but some of them will be discussed. It is sufficient to say that the defendant's claim is that individual acts not in themselves sufficient to justify a separation may, when considered in gross, be more than ample to warrant a judgment of separation, citing the case of *Heylmun* v. *Heylmun* (*supra*) as an authority for the proposition, as well as other cases.

There is absolutely no evidence to sustain the charges made by the defendant against the plaintiff, except her own testimony, and some slight corroboration by her mother and another woman friend who testified to a single transaction alleged to have occurred at the Cold Spring House shortly after the marriage. It is true that under the circumstances it is not probable that any other persons could have witnessed the occurrences in question The case, therefore, depends entirely upon the credibility of the parties to the action and their testimony must be weighed with the greatest care. Many of the charges of alleged cruelty are too trivial to warrant the belief that if true they could in any way have affected the defendant's health or peace of mind. The conduct of the parties during their married life and the plaintiff's generosity exhibited toward the defendant and her mother successfully contradict the false charges of penuriousness made against the plaintiff and his alleged failure to provide necessary medical treatment for the defendant. He paid large sums of money for medical treatment to numerous physicians both before and after the marriage. He paid the defendant's mother a sum larger than her earnings before the marriage for remaining at home and nursing her daughter as well as providing food and other necessaries and

paying room rent. While furnishing defendant's mother with rooms in his apartments, the plaintiff also paid her an allowance. The fact that he attempted to guard himself from alleged exhorbitant charges for medical and surgical services does not establish the charge that he refused to furnish necessary medical attendance. During the time that defendant now accuses plaintiff of ill treatment, he devoted considerable time to the entertainment of his wife — introducing her into good society, allowing her to play golf and tennis and furnishing her with the implements with which to play. It is true that he permitted photographs of himself and wife to be taken, but I am constrained to the belief that she did not object thereto and that she enjoyed the foolish publicity as much as he did, and also that under the circumstances the ingenuity and persistence of the photographers and reporters was the principal cause of the publicity.

Nor is there sufficient testimony to establish defendant's charges of abnormal and unnatural acts and practices. The weight of evidence is against such charges. The conduct and actions of the defendant in continuing to live with plaintiff as long as she did, continuously accepting his bounty up to the last minute of the time she lived with him; the fact that her mother remained in the plaintiff's house, enjoyed his hospitality and accepted his bounty, are entirely inconsistent with the truth of these charges. Lastly, if the charges were true, the defendant would gladly have welcomed the opportunity of being permitted to occupy a room alone with her mother, yet she complains that during the latter days of living with the plaintiff he refused to room with her, which alleged refusal on plaintiff's part in reality was only that he allowed defendant to room with her mother so that she could have the benefit of her mother's attention in her illness.

The claim on the part of the defendant that she was annoyed by the plaintiff's conduct in permitting her to be photographed and having their marriage and married life made the subject of publicity is negatived by the fact that before she left plaintiff she was in communication with a news syndicate and as soon as she left she permitted herself to be photographed and her reasons for leaving her husband to be published for a small monetary consideration.

I am satisfied that the immediate cause of defendant's leaving the plaintiff was because she and her mother conspired to compel the plaintiff to purchase or lease a large apartment for the occupancy of the family, including the mother, as well as to procure an automobile for the personal use of the defendant, which automobile was wholly unnecessary as she rode daily with the plaintiff; and also to procure additional and unnecessary clothing, and that the

act of leaving was a trick to that end; or that she became tired of her aged husband and preferred alimony to his society.

The defendant has repeatedly asserted, under oath and otherwise, that she had intentionally left her husband with intent not to return. In her acts she is undoubtedly assisted and encouraged by her mother who is her natural as well as legal guardian.

There are many circumstances that contradict the testimony of the defendant and her mother. It is unbelievable that the acid burns were inflicted upon her while she was sleeping without her knowledge, by a person unknown to her, who escaped through closed doors and windows before she was wakened by the action of the acid. Her insinuation that the plaintiff was in some way connected with the application of the acid is false and vicious.

That her health was affected by bad treatment on the part of her husband during her short married life is also false. She suffered from a nervous ailment before the marriage, she told plaintiff she had suffered from this for a long time, and her mother told the physician who attended her, when defendant had an attack of illness, that she had such an attack in 1925, the year before the marriage. She enjoyed a life of ease and pleasure during her life with plaintiff, taking her breakfast in bed and enjoying all the pleasures that money could buy and that the plaintiff could lavish upon her. She gained twenty pounds in weight.

The charges that the plaintiff locked defendant in her room and that he came home intoxicated and threatened to shoot her while in that condition, are inventions pure and simple, and the insinuations as to improper conduct on the part of plaintiff with the young adopted daughter, Dorothy, were groundless and particularly vicious. She copied her diary eliminating some entries therein and undertook to palm the copy off on the court as the original. It is greatly to the credit of her counsel that when he discovered the fact he made it known to the court. In short the defendant and her mother have falsified, exaggerated and magnified to such an extent as to render their testimony entirely unbelievable.

I am not overlooking the fact that the plaintiff also introduced false testimony into the case. The testimony of the witnesses Mixon and Androwosky is false and unworthy of belief. This testimony was introduced for the purpose of affecting the credibility of the defendant and her mother and had no other bearing on the case. It has wholly failed of its purpose and has been disregarded entirely. I am satisfied, however, that plaintiff and his counsel acted in good faith in the matter. Counsel should be more careful in investigating the character and antecedents of such witnesses before attempting to use them. These witnesses should be prosecuted.

The plaintiff may be a man of peculiar character, tastes and ideas, but the fact that he married the defendant under the circumstances which existed; that he endowed her with his property, lifted her out of poverty and gave her every attention up to the very day of her leaving him, and made arrangements for her entertainment that evening, all tend to show that his intentions toward his wife were good. His treatment of the defendant and her mother was uniformly kind and considerate, but there was no limit to their demands. At the time of leaving, the defendant made statements to the effect that plaintiff's money was not all that was to be desired. If she is sincere she has a remedy by which she can effectually rid herself of both the plaintiff and his money. The law of this State accords to her a right of action for an annulment of her marriage on the ground of non-age.

The defendant having failed to justify her conduct in leaving and abandoning the plaintiff, her counterclaim must be dismissed, and the plaintiff is entitled to a judgment of separation from bed and board forever. So ordered. Settle findings on notice.